[No. F053132. Fifth Dist. June 16, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
JEROME TORRES, Defendant and Appellant.

## Counsel

Kim Malcheski, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Lloyd G. Carter and Brian Alvarez, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**VARTABEDIAN, Acting P. J.**—Defendant Jerome Torres was convicted of one count of attempting to dissuade a witness and one count of issuing a criminal threat. In addition, as to each count, a gang enhancement was found true. At sentencing, the court struck the gang enhancement for each count and imposed an aggravated term of seven years for the criminal threat. Neither

defendant nor the People appealed. The Department of Corrections and Rehabilitation (Department of Corrections) sent a letter to the trial court asking for clarification of defendant's sentence because the sentence imposed was higher than that allowed by the sentencing triad applicable to the underlying conviction. Defendant was brought back to court and resentenced. At resentencing, the court refused to strike the gang enhancements and imposed a sentence more severe than the original sentence.

Defendant appeals, claiming the trial court's failure to strike the gang enhancements at resentencing violates the principles of res judicata and collateral estoppel, the court's failure to strike the gang enhancements constitutes an abuse of discretion, defendant's sentence amounts to cruel and unusual punishment, and the abstract of judgment needs correction. In addition, defendant argues that any failure of his counsel to argue in the trial court the issues he now raises on appeal constitutes ineffective assistance of counsel. Discussion of these claims is contained in the unpublished portion of this opinion.

A related issue arises here. We have requested that the parties brief the additional issue of whether the trial court erred under Penal Code[1] section 1170, subdivision (d) and the double jeopardy clause in sentencing defendant on recall to a term greater than his initial sentence under the present circumstances: his original sentence fell within the legal range of sentence, and correcting the unauthorized portion of his sentence did not mandate a sentence longer than that originally imposed. We publish the discussion of this dispositive issue, which causes us to remand this matter for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant was in the courtroom for his cousin's preliminary hearing in a case involving a driveby shooting. Victim-witnesses O.V. and D.V. were sitting outside the courtroom waiting to be called to testify. Defendant and the cousin's girlfriend came out of the courtroom and sat across from O.V. and D.V. An exchange of words took place, which O.V. reported.

Subsequently, defendant was arrested and charged with attempting to dissuade D.V. and O.V. from testifying (counts 1 and 2; § 136.1, subd. (a)(2)), and making a criminal threat against D.V. and O.V. (counts 3 and 4; § 422). In addition, a street gang enhancement was charged as to all four counts. (§ 186.22, subd. (b)(4), (1)(B).)

This matter charging defendant proceeded to trial. At trial, D.V. testified he was in the courthouse on October 17, 2005, with his cousin O.V. waiting to

---

[1] All further code references will be to the Penal Code, unless otherwise stated.

testify at the preliminary hearing of David Hernandez, defendant's cousin. While D.V. and O.V. were sitting outside waiting, defendant came out of the courtroom with a woman. They sat across from D.V. and O.V. Defendant stared at D.V. and O.V. with a mean expression.[2]

D.V. asked defendant why he was staring at them. Defendant called D.V. a "scrap," a derogatory term used by northern gang members to southern gang members. D.V. said it was not his fault that he was there; it was Hernandez's fault for shooting at them. Defendant responded by saying, "Well, you ain't gonna talk for long." During this time, defendant was looking at D.V. for the most part. After this exchange of words, defendant got up and walked back into the courtroom. D.V. and O.V. reported the incident to Police Officer Brian Haney, who proceeded to have defendant arrested that day.[3]

Defendant had a jury summons for that day in his pocket at the time of his arrest. When defendant was arrested at the courthouse shortly after the incident, he did not have any gang-related items in his possession, he was not wearing any gang-related apparel, and he did not have any gang-related tattoos.

When defendant was booked into jail, he filled out an intake form. One of the questions was whether defendant had any gang associations; he wrote "WSNG."[4] Defendant had been told that the form was for classification purposes.

Police Detective Edward Hinojosa testified as a gang expert at trial. He testified that Hernandez is a Norteno gang member and that his gang is a criminal street gang. It was Hinojosa's opinion that defendant is a gang member because he associated with Hernandez, committed a gang-related offense, and admitted to the booking officers that he associated with the West Side Norteno Gangsters.

On cross-examination, Hinojosa testified that, prior to this incident in the courthouse, defendant had not shown up in any law enforcement gang information, Hinojosa was not aware of a moniker for defendant, even though 90 percent of gang members had a moniker, and he was not aware that defendant had ever thrown hand signs or worn gang attire. Hinojosa testified that most gang members have run-ins with the law, but defendant had not

---

[2] O.V. and D.V. characterized defendant's stares as "mad-dogging." "Mad-dogging" is an expression used by gang members to describe certain behaviors, including looking at someone to intimidate them.

[3] Before this incident occurred, Officer Haney saw defendant mad-dogging O.V. and D.V. He told them that if anyone threatened them or commented to them to let him know.

[4] WSNG stands for West Side Norteno Gangsters, a northern gang.

been convicted of any crimes. No field identification cards, filled out when gang members are found associating with one another, had been filed on defendant.

Hernandez's fiancee testified on defendant's behalf. She said she went to the courthouse with defendant. Defendant had jury duty that day and kept checking the clock to make sure he was not going to be late. She testified that D.V. said to defendant, "What the fuck are you looking at?" and defendant responded, "I'm not fucking looking at you."

Defendant testified on his own behalf. He testified that he went to the courthouse on October 17, 2005, for jury duty. He went to the third floor because his cousin, Hernandez, was the subject of a proceeding. Defendant stated that he had no gang associations. When he was in the hall, D.V. said to him, "What the fuck are you looking at?" Defendant responded, "What do you mean?" The two exchanged words but defendant did not threaten D.V. or O.V. When defendant was booked in the jail, he told the deputy he was not a gang member. He asked the deputy how he should answer the gang association question, and the deputy told him that if his cousin was in a gang he should put "it" down.

The jury returned its verdicts finding defendant guilty of attempting to dissuade a witness (count 1) and criminal threats (count 3) against D.V. In addition, the jury found the gang enhancements to be true. The jury found defendant not guilty of the same charges that listed O.V. as the victim (counts 2 and 4).

The probation officer recommended that the 27-year-old defendant be granted probation "[t]aking into consideration the nature of the current offense, the defendant's lack of prior criminal record and willingness to comply with terms and conditions of probation."

The probation officer's report listed the sentencing ranges for defendant's conviction. For count 1 the range was 16 months, two years, and three years. Imposition of the gang enhancement with this conviction (attempting to dissuade a witness) carries a term of seven years to life in prison. (§ 186.22, subd. (b)(4)(C).) For count 3 (criminal threats) the sentencing range was 16 months, two years, and three years. Imposition of the gang enhancement with count 3 adds an additional five years.

The People filed a sentencing brief detailing the seriousness of this type of offense and asking the court to impose a prison term of seven years to life on count 1 with the gang enhancement. The People erroneously listed the sentencing range for count 3 as three, five, or seven years.

Defendant filed a sentencing brief asking the court to follow the recommendation of the probation officer and grant probation. The brief also detailed mitigating factors such as defendant's lack of any prior record, the absence of evidence of contacts with law enforcement prior to the instant offense, defendant's legitimate purpose at the courthouse for jury duty, and the fact that D.V. initiated the contact that resulted in defendant's convictions.

Sentencing took place on March 17, 2006. Defendant argued for a grant of probation or at the most a term of seven years on count 3. Defendant argued that a life term for the criminal activity that took place is too harsh. The court responded as follows:

"THE COURT: Well I have problems with the life aspect of it too. I wanted to try to work something out for 12 years.

"I just really feel that what your client did was—was unacceptable. I mean here you have these victims who were subject to a gang attack and in fear for their lives because in one instance they were shot at before and they had the courage to come to court, and your client then threatened them. I've got no—no tolerance for that kind of conduct. I got no sympathy for your client.

"Now granted he did not do anything other than threaten them. Tried to intimidate them from testifying, but to me that is a horrendous crime because this gang activity in our community is increasing and you—you need courageous people, like the victims in this case, to look those gang members in the eye and say you're not going to intimidate me. I'm going to do the right thing. That's a hard, hard thing to do. And to not send a message to your client and anybody else who intimidates a witness in these types of cases by giving him a slap on the wrist I'm not going to do, but I think given the conduct here a life term is somewhat harsh.

"What I'm looking at, I wanted to do the 12 years. I can't do that so now what I'm looking at is the aggravated term on Count 3 which would be the 7 years, staying the gang allegation, but if you object to the aggravated term, then I am going to give him the 7 to life.

"MR. GARCIA [defendant's counsel]: I would say with that, this would be the lesser of two evils in his eyes and I would say that—that would be probably the most appropriate given the circumstances and I don't see another alternative."

The People argued for the term of seven years to life. The trial court asked the People if the court could strike the special allegation that results in a life term. The People responded that the gang allegation could only

be struck in unusual cases and claimed the fact that defendant did not have a lengthy criminal history was not a consideration. The People argued that this case was not unusual and the court could not strike the gang enhancements for either count.

The court disagreed with the People and stated it found this to be an unusual case. "This young man is youthful. He has no record. There's no indication he was ever in any gang related activity prior to this instance." The court continued,

"MS. ARNERICH [prosecutor]: But that's not a—

"THE COURT: I know. Can I talk? I'm setting forth the grounds why I feel it is an unusual case. Everything you said for the most part about shocking the conscience of the court, there's no more sacred place in terms of—of—of witnesses and their protection than a courthouse where this occurred. I agree with all that, but on a youthful offender who's never been in jail before, never served one day and you're asking for 7 to life, and I'm inclined to impose a 7 year state prison sentence that he'll serve 85 percent of that, 6 years for basically three or four statements he made, I think is—is punishment and a substantial punishment, and I disagree with the People's position in this matter, but I will turn to you Mr. Garcia because it's difficult to find aggravating circumstances that would warrant the 7 year aggravated term on Count 3 which I'm inclined to impose. That would have to be with your consent. Otherwise I'm going to impose the 7 years to life, so you tell me what your client wants to do, because I don't want this to go up on appeal—

"MR. GARCIA [defense counsel]: No. I understand.

"THE COURT:—and find that there's no basis for the 7 year aggravated term and if it comes back, then I'm gonna impose the 7 years to life.

"MR. GARCIA: No. He's—we've had discussions and we've seen options, legally and so forth and the court's options and he's fine with 7 years. He's fine with the aggravated.

"MS. ARNERICH: Your Honor, just so the record is clear the 186.22 requires it to be an unusual case. An unusual case does not include a defendant's history. And 136—

"(Interruption by the Reporter.)

"MS. ARNERICH: [All] I was trying to point out to the court is the reasons you're setting forth are not technically legal reasons to find the unusual case.

"THE COURT: I think you would probably have the right to appeal this also.

"MS. ARNERICH: It will be done, Your Honor."

The court struck the gang allegations and imposed the upper term of seven years for count 3 (criminal threats). As to count 1 the court imposed the mid term and stayed that count. (Neither defendant nor the People appealed from this judgment.)

More than a year later, on April 2, 2007, the court received a letter from the Department of Corrections stating the minute order recited that the court struck the sentence enhancements and imposed the upper term of seven years on count 3, but the sentencing triad for count 3 is 16 months, two years, or three years. The department asked the court to review its file to determine if a correction was required. Citing the case of *People v. Hill* (1986) 185 Cal.App.3d 831 [230 Cal.Rptr. 109] the letter also advised, "When notified by the Department of Corrections and Rehabilitation that an illegal sentence exists, the trial court is entitled to reconsider all sentencing choices."

The court issued an order on April 6, 2007, for defendant's transportation back to court for resentencing.

Defendant filed points and authorities arguing that the court's power to resentence was limited to the provisions of section 1170, subdivision (d), and this subdivision provides that the court may not sentence the defendant to a term greater than the initial sentence. In addition, defendant argued the court retained the power to strike the gang allegations. Defendant urged the court to do so.

Resentencing was held on May 30, 2007. The court noted that it had imposed an illegal sentence, having relied on the People's claim that the aggravated term for count 3 was seven years.

Defendant asked the court to strike the gang enhancements once again, based on his complete absence of a prior record and complete absence of any evidence of gang involvement on his part except for this one instance. In addition, defendant pointed out that this was merely an exchange of words while defendant was legitimately at the courthouse in response to a jury summons, completely unlike cases where gang members come to the courthouse for the purpose of intimidating witnesses.

The People argued the court should not strike the gang enhancement because of the seriousness of defendant's conduct.

The court sentenced defendant as follows:

"THE COURT: I will say this, at the original sentencing I did have some misgivings about sentencing Mr. [Torres] to a life term given the fact that he had no record, and I tried to get around that, but in retrospect I've given this matter a lot of thought. The Legislature sets down the appropriate punishments for crimes that have been committed.

"The defendant was found guilty of the witness intimidation. Was found to have been a gang member and I think it's my duty to impose the prescribed sentence that is set forth in the, in the Code. As a result the defendant's, as to Count 1, the defendant's application for probation is denied.

"Pursuant to Penal Code Section 186.22B4C his prison sentence will be an indeterminate automatic life in prison with the minimum term of seven years as set forth in that Code section. He will be entitled to credits for the time he has received in custody.

"I will point out that even though this is a longer sentence, Mr. Garcia, than originally imposed by the court, the People have provided the court with a case of People versus Reyes, 212 CalApp3rd, 852 [260 Cal.Rptr. 846] . . . that sets forth a well settled rule of law an illegal sentence [may be] corrected any time even if the new sentence is more severe than the original sentence. Certainly that is the case here.

"As to Count 2 [Count 3] the defendant's application for probation is denied. He's committed to state prison for the mid term of two years with an additional and consecutive term of five years pursuant to the gang allegation of 186.22B1B for a total term of seven years. That will be stayed pursuant to Penal Code Section 654."

## DISCUSSION

### I., II.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III.   Imposition of a Higher Sentence After Recall of the Original Sentence

■   Section 1170, subdivision (d), provides that when a sentence is recalled the court may resentence the defendant as if he or she had not

---

*See footnote, *ante*, page 1420.

previously been sentenced, with the limitation that the new sentence may not exceed the initial sentence. The trial court did not believe it was restricted by the limitation in section 1170, subdivision (d) because the original sentence was illegal and required correction, even if the new sentence was more severe than the original sentence.

We disagree with the trial court because correcting the illegal portion of defendant's original sentence does not mandate the imposition of a higher sentence.

The trial court relied on the case of *People v. Reyes* (1989) 212 Cal.App.3d 852 [260 Cal.Rptr. 846] to support its decision to impose a sentence longer than the original sentence. In *Reyes*, the court corrected defendant's illegal sentence on several occasions. On the final occasion, the trial court erred in designating an indeterminate term as the principal term and the determinate term as a subordinate term. This was an unauthorized sentence; correcting it resulted in a longer term of imprisonment because the determinate term was not reduced to one-third of the midterm and it was required that the determinate term be served before the indeterminate term. In rejecting defendant's due process claim, the appellate court stated, "we believe that the disappointment appellant may experience in this situation is not so great as to overpower the well-settled rule of law that an illegal sentence may be corrected at any time, even if the new sentence is more severe than the original sentence." (*Id.* at p. 857.) The appellate court cited *In re Ricky H.* (1981) 30 Cal.3d 176 [178 Cal.Rptr. 324, 636 P.2d 13] as the authority for this well-settled rule.

In *In re Ricky H., supra,* 30 Cal.3d 176, in setting forth the maximum period of confinement the juvenile court's dispositional order designated a three-year middle term rather than the four-year upper term for an assault offense. The Supreme Court found that this was erroneous because Welfare and Institutions Code section 726 required " 'the juvenile court judge to automatically specify in his commitment order the maximum period of confinement corresponding to the applicable upper terms set forth in [the] Penal Code.' " The Supreme Court stated, "Authority exists for an appellate court to correct a sentence that is not authorized by law whenever the error comes to the attention of the court, even if the correction creates the possibility of a more severe punishment." (*In re Ricky H., supra,* at p. 191.) The Supreme Court cited *People v. Serrato* (1973) 9 Cal.3d 753 [109 Cal.Rptr. 65, 512 P.2d 289] and *In re Sandel* (1966) 64 Cal.2d 412 [50 Cal.Rptr. 462, 412 P.2d 806] as authority for this rule.

In *People v. Serrato, supra,* 9 Cal.3d 753, the defendants were found guilty of possession of a fire bomb (former § 452). The defendants made a

motion for new trial. The trial court denied the motion for new trial and "[i]n lieu thereof" found the defendants guilty of disturbing the peace (§ 415). The court sentenced the defendants to two years of probation. (*Serrato, supra,* at pp. 756–757.) On appeal the defendants asserted the trial court could not reduce their convictions to a violation of section 415 because the court cannot convict a defendant of an uncharged offense without his consent. The Supreme Court agreed. (*Serrato, supra,* at pp. 758–759.) The defendants argued that based on this error by the trial court they were entitled to a dismissal or a judgment of acquittal. The Supreme Court disagreed and found the trial court's actions were unauthorized. (*Id.* at pp. 762–763.)

The defendants' alternate argument was that if they were not entitled to an acquittal then they were at least protected against more severe punishment on remand. The defendants relied on *People v. Henderson* (1963) 60 Cal.2d 482 [35 Cal.Rptr. 77, 386 P.2d 677] to support their position. The court rejected the defendants' argument as follows:

"In *Henderson*, defendant was convicted of first degree murder and sentenced to life imprisonment. Following reversal of that conviction, he was again tried and convicted, and the jury fixed the penalty at death. This court held that the California Constitution's guarantee against double jeopardy (art. I, § 13) precluded the imposition of a more severe sentence upon retrial.

"In the *Henderson* case, as in each of the cited cases which followed it, the sentence imposed after the first trial was a lawful one, within the limits of the discretion conferred by statute for the offense of which the defendant had been convicted. The judgments pronounced at the first trials were reversed because of errors having nothing to do with the sentences.

"The rule is otherwise when a trial court pronounces an unauthorized sentence. Such a sentence is subject to being set aside judicially and is no bar to the imposition of a proper judgment thereafter, even though it is more severe than the original unauthorized pronouncement. A few examples will illustrate the principle.

"*In re Sandel, supra,* 64 Cal.2d 412, grew out of a petition by a prisoner who attacked his confinement on several grounds, one of them being that the Adult Authority was treating his sentence for escape as consecutive to an earlier sentence, rather than concurrent, as the trial court had pronounced it. This court held that the trial court had no power to make the sentences concurrent in view of the statute which required a consecutive sentence, that the Adult Authority had no jurisdiction to correct the mistake of the trial court, that the sentence must be corrected judicially, and that this court had jurisdiction to do so. This court then held that the sentence for escape be deemed consecutive.

"In *People* v. *Orrante* [(1962)] 201 Cal.App.2d 553 [20 Cal.Rptr. 480], the trial court placed defendant on probation following a conviction for murder. On an appeal by the People taken under Penal Code section 1238, subdivision (6), the Court of Appeal held that the trial court exceeded its jurisdiction in granting probation, and the case was remanded with instructions to impose the sentence prescribed by law.

"In *People* v. *Massengale* [(1970)] 10 Cal.App.3d 689 [89 Cal.Rptr. 237], the trial court sentenced the defendants to the county jail for the offense of extortion, for which the statute prescribes a prison sentence. When defendants appealed from the judgment, the appellate court noticed the unauthorized sentence and remanded the cases to the superior court for imposition of lawful sentences." (*People v. Serrato, supra*, 9 Cal.3d at pp. 763–765, fns. omitted.)

The Supreme Court found that the order made by the trial court was in excess of the court's jurisdiction and the defendants were not necessarily entitled to claim the protection of that invalid judgment as a limitation on the court's further actions. (*People v. Serrato, supra*, 9 Cal.3d at p. 765.)

In the present case, the letter to the trial court regarding defendant's sentence cited the case of *People v. Hill, supra*, 185 Cal.App.3d 831, for the proposition that when an illegal sentence exists the trial court has the authority to reconsider all of its sentencing choices. In *Hill*, the trial court originally sentenced the defendant to an aggregate term of 16 years in prison. The trial court was notified by the Department of Corrections that the sentence was erroneous and the maximum consecutive sentence for the defendant's four convictions was 14 years. The court resentenced the defendant to a term of 14 years. The defendant appealed, claiming the trial court was authorized to correct only the unauthorized portion of his sentence and was without authority to resentence those portions of the sentence that were authorized. (*Id.* at pp. 833–834.)

The appellate court disagreed. The court found that the reasoning applied to cases on remand from an appellate court applied equally to cases where the department of corrections notifies the trial court of an illegality in a sentence. "When a case is remanded for resentencing by an appellate court, the trial court is entitled to consider the entire sentencing scheme. Not limited to merely striking illegal portions, the trial court may reconsider all sentencing choices." (*People v. Hill, supra*, 185 Cal.App.3d at p. 834.) The appellate court found that the 14-year sentence was appropriate and noted that a defendant is not entitled to keep the favorable aspects of his original sentence and eliminate the unfavorable aspects. (*Id.* at p. 835.)

In all of the above cases, the defendant either received a sentence equal or lesser than his original sentence, or received a greater sentence only when the court's sentence demonstrated legally unauthorized leniency that resulted in an aggregate sentence that fell below that authorized by law.

We find the case of *People v. Mustafaa* (1994) 22 Cal.App.4th 1305 [28 Cal.Rptr.2d 172] to be more nearly on point with what happened in this case. In *Mustafaa* the trial court imposed consecutive terms for the gun use enhancements in two counts but imposed concurrent sentences for the two robbery convictions. The appellate court found this to be error. "Mustafaa pleaded guilty to three counts of robbery and admitted that he personally used a firearm during each robbery. The personal gun use enhancements to which he admitted were not separate crimes and cannot stand alone. Each one is dependent upon and necessarily attached to its underlying felony. In separating the felony and its attendant enhancements by imposing a concurrent term for the felony conviction and a consecutive term for the enhancement the court fashioned Mustafaa's sentence in an unauthorized manner under the sentencing procedure. We must therefore remand for resentencing." (*Id.* at p. 1311.)

The court noted that the prohibition against double jeopardy "generally prohibits the court from imposing a greater sentence on remand following an appeal." (*People v. Mustafaa, supra,* 22 Cal.App.4th at p. 1311.) The appellate court found that the trial court imposed an unauthorized sentence but on remand double jeopardy protected the defendant's right to not receive a greater sentence.

"In Mustafaa's case the rule against double jeopardy applies because the court imposed a legal aggregate sentence, only fashioning it in an unauthorized manner. The court's error in separating the convictions from their attendant enhancements, though unauthorized by law, does not make the total sentence illegal. On remand the court may not impose a total sentence more severe than the sentence originally imposed." (*People v. Mustafaa, supra,* 22 Cal.App.4th at pp. 1311–1312.)

■ Here, the aggregate sentence of seven years imposed on defendant at the original sentencing hearing could have been lawfully achieved by imposing the mid term of two years on count three plus the consecutive enhancement term of five years; it did not fall below the mandatory minimum sentence and was therefore not a legally unauthorized lenient sentence. The one unauthorized component of the sentence originally imposed by the court was not lenient—it was in fact more severe than that authorized (the correct upper term for count 3 being three years rather than seven). Principles of double jeopardy as well as the mandate of section 1170, subdivision (d)

require that under these circumstances the trial court may not impose a sentence longer than originally imposed. Thus, the trial court erred in imposing a sentence of seven years to life after it recalled defendant's sentence of seven years in prison. The case must be remanded. On remand, the trial court may not impose a total sentence greater than seven years in prison.

We realize that requiring the trial court to not impose a sentence of over seven years on remand will require the trial court to strike the gang enhancement relating to count 1, since imposition of the gang enhancement would mandate that defendant serve a sentence of seven years to life in prison. The trial court was allowed to strike the gang enhancements if it found unusual circumstances, which it did.[6] We find nothing unauthorized in the court's original decision to strike the gang enhancements because the reasons given by the trial court were sufficient to support its decision. We note the People have not asserted otherwise.[7]

■ Although remand requires the trial court to strike the gang enhancement in count 1, the court is not required to also strike the gang enhancement in count 3. "When a proper basis exists for a court to strike . . . allegations as to at least one current conviction, the law does not require the court to treat other current convictions with perfect symmetry if symmetrical treatment would result in an unjust sentence." (*People v. Garcia* (1999) 20 Cal.4th 490, 500 [85 Cal.Rptr.2d 280, 976 P.2d 831].)

By our stating that the trial court would be authorized to impose the gang enhancement as to count 3 but not as to count 1, we are not suggesting that the court impose the gang enhancement on count 3, we are merely noting that it has the authority to do so. The court must arrive at its sentencing decision utilizing the correct law and considering all of the factors necessary to make that decision with the caveat that the trial court may not impose a sentence greater than seven years.

---

[6] In striking an enhancement in " 'furtherance of justice' " the court "may look to general principles, outside the framework of the sentencing scheme, or be guided, instead, by the particulars of the scheme itself, informed as well by 'generally applicable sentencing principles relating to matters such as the defendant's background, character, and prospects,' including the factors found in California Rules of Court, rule 410 [now rule 4.410] et seq." (*People v. McGlothin* (1998) 67 Cal.App.4th 468, 474 [79 Cal.Rptr.2d 83]; see *People v. Williams* (1998) 17 Cal.4th 148, 160 [69 Cal.Rptr.2d 917, 948 P.2d 429].)

[7] Although the striking of the gang enhancements was not unauthorized because the court provided sufficient reasons for doing so, the trial court did err in not ordering the reasons for the dismissal to be set forth in the minutes. This is a mandatory requirement that is not subject to harmless error analysis. (*People v. Orin* (1975) 13 Cal.3d 937, 943–944 [120 Cal.Rptr. 65, 533 P.2d 193].) The question of whether automatic reversal is required when the trial court fails to set the reasons for the dismissal in the minutes is currently pending before the California Supreme Court in *People v. Bonnetta*, review granted March 12, 2008, S159133.

## IV.  Other Issues[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The matter is remanded to the trial court for resentencing. On remand the trial court may not impose a sentence that exceeds seven years in prison. In all other respects, the judgment is affirmed.

Wiseman, J., and Hill, J., concurred.

---

[*]See footnote, *ante*, page 1420.