Filed 11/10/21  P. v. Carter CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B309411 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA435752) |
| v. | |
| KEITH CARTER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gregory A. Dohi, Judge.  Affirmed.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Nima Razfar, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Two years after Keith Carter was sentenced to an aggregate term of 22 years four months in prison, the California Department of Corrections and Rehabilitation (CDCR) notified the superior court that the sentence was unlawful because one component of it was short by eight months.  The court thereafter held a second sentencing hearing and added the eight months to Carter's sentence, bringing it to 23 years.  On appeal, Carter contended the court had no authority to increase a component of his sentence without reevaluating the whole, and in any event must be given an opportunity to exercise newly established discretion to strike a recidivism enhancement.  We agreed with the second contention, declined to reach the first, and affirmed with a direction to reevaluate Carter's sentence.

At resentencing upon remand, the trial court declined to strike prior serious felony enhancements and kept the sentence unchanged.

Carter contends the court erred by (1) maintaining the initial aggregate sentence increase of eight months, (2) failing to reconsider all sentencing choices, and (3) imposing restitution fines and fees without holding a hearing on his ability to pay them.  He also contends he received ineffective assistance after counsel failed to request dismissal of a prior strike conviction. We affirm.

## BACKGROUND

In separate cases in 2015, Carter (1) pleaded guilty to forcible rape (Pen. Code, § 261, subd. (a)(2))[1] and (2) was convicted by a jury of evading a peace officer causing injury (Veh. Code, § 2800.3, subd. (a)).  Division Two of this District affirmed

---

[1] Undesignated statutory references will be to the Penal Code.

the evading judgment. (*People v. Carter* (July 27, 2017, B271107) [nonpub. opn.].)

In 2015 in the rape case, case No. BA435752, Carter admitted to a prior serious felony conviction and was sentenced to state prison for the low term of three years, doubled to six years as a second strike, plus five years for the prior serious felony, for a total of 11 years.

In 2016 in the evading case, case No. BA424194, the trial court found that Carter had suffered a prior strike conviction, denied his motion to dismiss the strike, and sentenced him to a total of 19 years in state prison, comprising the upper term of seven years, doubled to 14 years as a second strike, plus five years for the aforementioned prior serious felony conviction.

In selecting the high term, the court commented, "The conduct was extremely reckless. It was captured on video. We saw the defendant careening [through] three narrow streets in a residential area at a time of day when you'd expect all kinds of people, children, to be around. Driving was at such a high velocity that he flipped an SUV. [¶] The injuries [suffered] by Ms. Williams were severe. She was hospitalized for three days, she was in extreme pain, and if I recall correctly, she testified that she still is traumatized by what happened to her. [¶] . . . . I'm also noting the defendant's lengthy criminal history which spans [four] states and goes back to 1986. [¶] It includes six felony convictions and five misdemeanor convictions."

After imposing the evading sentence the trial court revisited the rape sentence pursuant to section 1170.1.[2] It

---

[2] Section 1170.1 provides in pertinent part: "[W]hen any person is convicted of two or more felonies, whether in the same proceeding or court or in different proceedings or courts, . . . and

subordinated the rape case to the evading case, and where previously it had doubled the low term of three years in the rape case, it now reduced that term to one-third of the six-year middle term, doubled. The court calculated this modified component as three years four months, which it ordered to run consecutive to the evading sentence. The court also stayed the five-year serious felony enhancement imposed in the rape case.

The trial court's calculation of the subordinate prison term was in error, as one-third of six years is two years, and double that is four years, not three years four months, a discrepancy of eight months.

Two years later, the CDCR informed the trial court of the calculation error. The court then held another sentencing hearing at which it corrected the error, which increased Carter's sentence by eight months.

Carter appealed from the resulting sentence, contending the trial court erred in resentencing him by failing to reconsider the propriety of all components of the aggregate sentence, and instead merely tacking eight months onto one component. He also contends that newly-enacted Senate Bill No. 1393 required that the case be remanded for reconsideration of his recidivism enhancements. We agreed with the second contention, which essentially mooted the first, and remanded the matter and directed the trial court to "reevaluate Carter's sentence, including by determining whether to strike" the serious felony prior for

---

a consecutive term of imprisonment is imposed . . . , the aggregate term of imprisonment for all these convictions shall be the sum of the principal term, the subordinate term, and any additional term imposed for applicable enhancements for prior convictions [or] prison terms . . . ." (§ 1170.1, subd. (a).)

4

purposes of the five-year enhancement imposed under section 667, subdivision (a)(1).  We further directed that "[i]f the court strikes one or both of the enhancements or otherwise changes the sentence it shall amend the abstract of judgment and forward the amended abstract of judgment to the Department of Corrections and Rehabilitation."  (*People v. Carter* (Feb. 28, 2019, B288591) [nonpub. opn.].)

Upon remand, Carter's defense counsel moved to (1) switch the priority of the rape and evading sentences and (2) strike the prior serious felony enhancement.  The defense and prosecution each informed the court that it had discretion to resentence Carter anew.

After a lengthy discussion that included consultation with court rules, the record, the probation report, and a reporter's transcript of proceedings from the rape case, the court observed that the rape case was "extremely violent" and the evading case was of an "egregious nature."  The court stated it was "declining to modify the sentence in any way at this time," and denied both of Carter's motions.

## DISCUSSION

## A.    The Trial Court Properly Corrected the Aggregate Sentence

Our Supreme Court has held that a court may correct an unauthorized sentence "whenever the error [comes] to the attention of the trial court or a reviewing court."  (*People v. Serrato* (1973) 9 Cal.3d 753, 763.)  An unauthorized sentence "is subject to being set aside judicially and is no bar to the imposition of a proper judgment thereafter, even though it is more severe than the original unauthorized pronouncement."  (*Id.* at p. 764.)

5

Here, the trial court initially imposed an aggregate sentence of 22 years four months, which under the circumstances was unauthorized under any available sentencing permutation, i.e., no possible combination of sentencing components could have resulted in such a sentence. Pursuant to *Serrato*, therefore, the court was entitled to correct the sentence to 23 years after being informed by the CDCR of the calculation error, even though the correction added eight months to Carter's sentence.

Carter argues that the eight-month increase ran afoul of subdivision (d) of section 1170. We disagree.

Section 1170, subdivision (d), provides in pertinent part: "When a defendant . . . has been sentenced to be imprisoned in the state prison . . . and has been committed to the custody of [CDCR] . . . the court may . . . upon the recommendation of the [CDCR] . . . recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced, provided the new sentence, if any, *is no greater than the initial sentence.*" (§ 1170, subd. (d)(1), italics added; see also *People v. Hill* (1986) 185 Cal.App.3d 831, 834.)

Relying on *People v. Torres* (2008) 163 Cal.App.4th 1420, 1432 (*Torres*), Carter argues that the trial court's original miscalculation resulted in an authorizable lenient term, which section 1170 prevented the court from correcting if such a correction resulted in a greater sentence.

*Torres* is inapposite. There, the trial court imposed what it thought was the upper term of seven years for making criminal threats, whereas the upper term was actually three years. (*Torres, supra*, 163 Cal.App.4th at pp. 1421-1422, 1427.) After the CDCR informed the trial court of the error, the court applied

6

the proper upper term but also imposed gang enhancements it had previously dismissed, resulting in a sentence of seven years to life.

The appellate court reversed under section 1170 because the sentence had increased. In doing so, it observed that the original seven-year sentence was not strictly illegal because it "could have been lawfully achieved by imposing the mid term of two years [for criminal threats] plus the consecutive [gang] enhancement term of five years." (*Torres*, *supra*, 163 Cal.App.4th at p. 1432.)

The difference between *Torres* and the instant case is that in *Torres* the original sentence was lawful, whereas here the original sentence was unlawful. Even *Torres* recognized in dicta that a greater sentence would be proper in a scenario where the trial court's original sentence "demonstrated legally unauthorized leniency that resulted in an aggregate sentence that fell below that authorized by law." (*Torres*, *supra*, 163 Cal.App.4th at pp. 1432-1433.)

That latter scenario is what happened here: The trial court miscalculated the subordinate term, resulting in a reduced sentence that was unauthorized under any permutation. Accordingly, even under the *Torres* dictum such an error may be corrected even if the resulting sentence is longer than the original one. (*Torres*, *supra*, 163 Cal.App.4th at p. 1432.)

*Torres* also observed in dicta that the seven-year sentence at issue there, which could have been achieved lawfully in a permutation other than that upon which the trial court relied, "did not fall below the mandatory minimum sentence and was therefore not a legally unauthorized lenient sentence." (*Torres*, *supra*, 163 Cal.App.4th at p. 1432.) Characterizing this dictum

7

as *Torres's* "core holding," Carter argues that an erroneous sentence may be corrected upward *only* where the mistake "fall[s] below the mandatory minimum sentence."

This dictum was not *Torres's* holding but even if it were, it would run afoul of *Serrato* (which Carter materially ignores), in which our Supreme Court held that an "unauthorized" sentence may be corrected upward. The Supreme Court did not limit its holding to a sentence that falls below some mandatory minimum.

## B. The Scope of Resentencing Upon Remand Was Proper

In our prior opinion we stated that the trial court "may reconsider all sentencing choices" in reevaluating Carter's sentence, and in the disposition directed the court to "reevaluate Carter's sentence, including by determining whether to strike the enhancements imposed under section 667, subdivision (a)(1)." (*People v. Carter*, *supra*, B288591, at pp. 5-6.) We also directed that "[i]f the court strikes one or both of the enhancements *or otherwise changes the sentence* it shall amend the abstract of judgment and forward the amended abstract of judgment to the Department of Corrections and Rehabilitation." (*Id.* at p. 6, italics added.)

As noted above, after initially sentencing Carter in the evading case, the court revisited the rape sentence, ultimately subordinating the rape sentence to the evading sentence pursuant to section 1170.1, which had the effect of taking one year off the base sentence.

At the second resentencing, Carter's defense counsel moved to reverse the principal and subordinate terms, making the rape term the principal sentence and the evading term the

8

subordinate sentence, which would reduce the aggregate sentence further.  The court declined to do so.

The court then discussed resentencing pursuant to our remand, stating "So my thought is basically the only issue that remains is whether I should strike the five-year term, and that's basically what the Court of Appeals [*sic*] said. . . .  So basically, the only issue that remains is whether I should strike the five-year prior."

Carter argues that the trial court's comment that the "only issue" was the five-year enhancement suggest it limited itself to reconsidering *solely* that enhancement, and failed to reconsider all discretionary sentencing choices on remand, thus abusing its resentencing discretion and violating our mandate to reconsider every component of the sentence.  We disagree, for several reasons.

First, the fact that the trial court considered, at length, switching the priority of the rape and evading cases establishes that it was looking to the aggregate sentence, not only to the five-year enhancement.  Its comment that the five-year term was the "only remaining issue" was not to limit consideration to that term but to distinguish the next phase of the discussion from the preceding discussion about principle versus subordinate terms.

Second, the defense and prosecution each informed the court that it had discretion to resentence Carter anew, and nothing in the proceedings suggested there was any limit to that discretion.  Third, the trial court was well conversant with sentencing rules, and was armed with our direction on remand that if the sentence changed with respect to the five-year enhancement "or otherwise," the court should so inform the Department of Corrections and Rehabilitation.  All of this

suggests the court was well aware of its pan-sentencing discretion, and nothing suggests the contrary.

## C. Court-Imposed Assessments and Fines Did Not Violate Due Process

The trial court imposed several fines and fees without a hearing to determine Carter's ability to pay them. Carter argues that imposition of these fines and fees was unconstitutional absent such a hearing pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157, 1168. We disagree.

Due process precludes a court from imposing fines and assessments only if to do so would deny the defendant access to the courts or if the defendant's crimes were driven by poverty. (*People v. Hicks* (2019) 40 Cal.App.5th 320, 329; see *People v. Caceres* (2019) 39 Cal.App.5th 917 [declining to apply *Dueñas's* "broad holding" beyond its "unique facts"].)

Here, imposition of assessments and fees in no way interfered with Carter's right to present a defense at trial or to challenge the trial court's rulings on appeal; they were imposed after trial. And *Carter's* crimes—unlike Mrs. Duenas's multiple convictions for driving without a license she could not afford—were not driven by poverty. The court therefore did not violate his due process rights by imposing the assessments and restitution fine without first ascertaining his ability to pay them.

## D. Carter Fails to Establish Ineffective Assistance of Counsel

As noted above, in the evading case Carter moved to dismiss a prior strike, which the trial court denied. He did not originally move to dismiss that same strike in the rape case, and upon remand opted not to move to dismiss the strike as to either case. Carter argues that his attorney's decision not to move to

10

dismiss the strike in either case upon remand constituted ineffective assistance of counsel. We disagree.

"To prevail on a claim of ineffective assistance of counsel, a defendant ' "must establish not only deficient performance, i.e., representation below an objective standard of reasonableness, but also resultant prejudice." ' [Citation.] A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. [Citation.] Tactical errors are generally not deemed reversible, and counsel's decisionmaking must be evaluated in the context of the available facts. [Citation.] To the extent the record on appeal fails to disclose why counsel acted or failed to act in the manner challenged, we will affirm the judgment unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation. [Citation.] Moreover, prejudice must be affirmatively proved; the record must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " (*People v. Maury* (2003) 30 Cal.4th 342, 389.)

Carter attaches to a companion petition for writ of habeas corpus his remand counsel's declaration that she had no tactical reason not to move to dismiss his prior strike, but "simply did not consider the option."

But no objective reason exists to suppose a reasonable attorney upon remand would have filed a motion to dismiss a prior strike. The trial court had already denied such a motion in 2016, denied a similar motion to strike a prior serious felony

11

enhancement in 2018, and stated it did not intend to modify the sentence in any way.

Further, the record reflects no materially different circumstances nor any indication that the court had changed its mind. Carter argues that his prison record from the 2016 sentencing to the 2020 resentencing was exemplary, but there is no indication that the trial court, which in 2020 denied Carter's motion to dismiss a prior serious felony enhancement, would have considered four years of exemplary prison time to have altered its original estimation that Carter fell within the spirit of the Three Strikes laws.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED



CHANEY, J.


We concur:



ROTHSCHILD, P. J.



BENDIX, J.

12